TCI WEST END, INC., Appellant,

v.

CITY OF DALLAS and Texas Historical Commission, Appellees.

No. 05–08–00319–CV.

Court of Appeals of Texas, Dallas.

Dec. 19, 2008.

Rehearing Overruled Jan. 30, 2009.

Mitchell Madden, Thomas V. Murto, III, Melissa A. Johnson, Madden Sewell, LLP, Dallas, TX, for Appellant.

Janet M. Spugnardi, Office of the City Attorney, Dallas, TX, Joe H. Thrash, Michael P. Murphy, Office of the City Attorney, Austin, TX, for Appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice O'NEILL.

Appellant TCI West End, Inc. brings this interlocutory appeal challenging the trial court's orders granting appellee City of Dallas's first amended plea to the jurisdiction and appellee Texas Historical Commission's first amended plea to the jurisdiction. We affirm.

## Background

TCI owns property in the City's West End Historic District and for decades, a building known as the MKT Freight Station was located on this property. The parties dispute whether TCI properly obtained a demolition permit from the City and whether it obtained the legally required approval to demolish the building from either the City of Dallas Landmark Commission or Dallas City Council. Regardless, the City stepped in, revoked the demolition permit, ordered a halt to the demolition process, and ordered TCI to stop removing debris from the property. Despite the permit revocation, TCI directed the building to be demolished on April 29, 2006.

The City filed suit against TCI pursuant to chapters 54 and 211 of the Texas Local Government Code and sought to have the building reconstructed using as many of the original materials as possible. The City also sought civil penalties from TCI

for each day it continued to violate the City's ordinances. The Commission filed a petition in intervention asserting a cause of action under local government code section 315.006 and requested the trial court order TCI to pay damages equal to the cost of constructing a new structure using as many of the original materials as possible or in the alternative, impose a constructive trust on the property.

TCI filed counterclaims against the City and the Commission alleging inverse condemnation under article I, section 17 of the Texas Constitution, a violation of the Texas Private Real Property Rights Preservation Act, and a conspiracy to take its property. The City and Commission in turn filed pleas to the jurisdiction claiming the trial court did not have subject matter jurisdiction over the counterclaims. The City alleged (1) there was no physical or regulatory taking, (2) TCI failed to exhaust the required administrative remedies and comply with its ordinances, (3) it was protected by governmental immunity, and (4) TCI's claims were not ripe. The Commission asserted (1) governmental immunity, (2) lack of standing, and (3) failure to exhaust administrative remedies.

On February 18, 2008, the trial court signed the following order as to the City:

On January 31, 2008, came for hearing City's Amended Plea to the Jurisdiction in the above-styled and numbered cause. The Court, having considered the amended plea, the attachments to the plea, the pleadings, the evidence submitted, and the written and oral arguments of counsel, is of the opinion that the amended plea to the jurisdiction should be and is GRANTED as follows:

GRANTED as to Defendants' inverse condemnation claim under Article I, Section 17 of the Texas Constitution, *and*

*those claims are dismissed as not being ripe for adjudication.*

GRANTED as to Defendants' taking claim under the Texas Private Real Property Rights Preservation Act set forth in the Texas Government Code section 200.001 et. seq., *and those claims are dismissed with prejudice.*

GRANTED as to Defendants' conspiracy to take claim, *and those claims are dismissed with prejudice.*

It is accordingly ORDERED, ADJUDGED, and DECREED that the preceding claims as to which the City's plea has been granted are DISMISSED *as stated herein.* . . . [1]

On the same day, the trial court signed an order granting the Commission's first amended plea to the jurisdiction on TCI's counterclaims and dismissed the counterclaims with prejudice. TCI filed notices of appeal for both orders.

In three issues, TCI appeals (1) whether the trial court has jurisdiction over its inverse condemnation claims, (2) whether its inverse condemnation claim against the City is ripe, and (3) whether its conspiracy to take claims against both appellees are barred by governmental immunity.

### Commission's Plea to the Jurisdiction

 The trial court granted the Commission's first amended plea to the jurisdiction in which it alleged governmental immunity applied. TCI contends the trial court erred because the Commission's claim is a forbidden exercise of police power, and its actions constitute a taking under section 315.006.

 Article I, section 17 of the Texas Constitution guarantees that "no person's property shall be taken, damaged, or destroyed for or applied to public use without

adequate compensation being made. . . ." TEX. CONST. art. I, § 17. A takings cause of action consists of three elements: (1) an intentional act by the government under its lawful authority (2) resulting in a taking of the plaintiff's property (3) for public use. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *City of Dallas v. VSC, L.L.C.*, 242 S.W.3d 584, 590 (Tex.App.-Dallas 2008, pet. filed). When a plaintiff does not allege a valid inverse condemnation claim, governmental immunity applies, and the trial court should grant a plea to the jurisdiction. *City of Dallas v. Blanton*, 200 S.W.3d 266, 272 (Tex.App.-Dallas 2006, no pet.). However, if properly pleaded, article I, section 17 of the Texas Constitution, provides a waiver to immunity. *Bowles v. Clipp*, 920 S.W.2d 752, 758 (Tex.App.-Dallas 1996, writ denied).

 As a state agency, the Commission possesses immunity from suit and liability. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(A) (defining governmental unit to include "all commissions" of the state) (Vernon 2005). In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A plea questioning the trial court's jurisdiction raises a question of law we review de novo. *Id.* at 226.

 To determine if the plaintiff has alleged a valid waiver of immunity, "we consider the facts alleged by the plaintiff and, to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Id.* Thus, in order to maintain its counterclaims against the

---

1. The language italicized was handwritten in the order by the presiding judge.

Commission, TCI's pleadings must establish the Commission engaged in a regulatory taking of its property in violation of the Texas Constitution and therefore waived sovereign immunity.

 Takings are classified as either physical or regulatory. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 933 (Tex. 1998); *City of El Paso v. Maddox,* 08–06–00332–CV, 2008 WL 4181166, at *4 (Tex. App.-El Paso September 11, 2008, no pet. h.). Physical takings occur when the government authorizes an unwarranted physical occupation of an individual's property. *Mayhew,* 964 S.W.2d at 933. To raise a valid regulatory takings claim, the only kind alleged by TCI, it must show that a regulation (1) compels the owner to suffer a physical invasion of its property, (2) destroys all economically viable use of the property, or (3) unreasonably interferes with the use and enjoyment of the property. *Sheffield Dev. Co., v. City of Glenn Heights,* 140 S.W.3d 660, 671 (Tex.2004); *Taub v. City of Deer Park,* 882 S.W.2d 824, 826 (Tex.1994).

 With regard to a regulatory taking, both the state and federal takings provisions recognize that while "all property is held subject to the valid exercise of the police power," a regulation may, under some circumstances, constitute a taking requiring compensation. *City of College Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 804 (Tex.1984); *Rowlett/2000, Ltd. v. City of Rowlett,* 231 S.W.3d 587, 591 (Tex. App.-Dallas 2007, no pet.). In a regulatory taking, it is the passage of the ordinance that injures a property's value or usefulness. *Lowenberg v. City of Dallas,* 168 S.W.3d 800, 802 (Tex.2005) (noting "sharp distinctions" between physical takings and regulatory takings).

 TCI argued in its pleadings that "section 315.006 of the Texas Local Government Code, under which the THC seeks to recover, is either unconstitutional as written or as applicable under the factual scenario present in the case and, if constitutional, constitutes a taking for which TCI must be compensated. . . ." In challenging the constitutionality of a statute, a party may show that the statute is unconstitutional on its face or as applied to that party. *Geeslin v. State Farm Lloyds,* 255 S.W.3d 786, 794 (Tex.App.-Austin 2008, no pet.). To sustain a facial challenge, the party must show that the statute, by its terms, always operates unconstitutionally. *Id.* To sustain an as-applied challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Id.*

First, we note TCI has not properly raised a valid facial challenge to section 315.006 because it has not alleged any facts or arguments establishing it always operates unconstitutionally. Second, on appeal, TCI has not alleged facts or arguments to support an as-applied constitutional challenge, but focuses its argument on whether the Commission's actions constitute a taking. As such, TCI has waived its 315.006 constitutional challenges. TEX. R.APP. P. 38.1(h). Thus, we will not consider the constitutionality of section 315.006, but will instead begin with a takings analysis. *See In re Doe 2,* 19 S.W.3d 278, 284 (Tex.2000) (stating the constitutionality of a statute should be considered only when the question is properly raised and such determination is necessary and appropriate to a decision in the case because the presumption is a statute enacted by the legislature is constitutional).

TCI asserts its claim against the Commission is "based upon THC's claims under § 315.006 in this case." Texas Local Government Code section 315.006 allows the Commission to seek damages for de-

struction of a historic structure or property as follows:

(j) A person is liable to the Texas Historical Commission for damages if:

(1) the person:

(A) demolishes, causes to be demolished, or otherwise adversely affects the structural, physical, or visual integrity of a historic structure or property that is located in the municipality; and

(B) does not obtain the appropriate demolition or building permit or other form of written permission from the municipality before beginning to demolish, cause the demolition of, or otherwise adversely affect the structural, physical, or visual integrity of the structure or property; and

(2) the commission determines that the municipality has not filed a civil action under Subsection (b) and has not taken appropriate action to carry out Subsection (d) before the 90th day after the date the action described by Subsection (1)(A) occurs.

(k) If the Texas Historical Commission makes a determination under Subsection (j)(2), the commission may enforce this section, and the municipality may not act under this section. Damages recovered under this subsection shall be deposited in the Texas preservation trust fund account.

TEX. LOC. GOV'T CODE ANN. § 315.006(j)-(k) (Vernon 2005). Thus, when the City failed to bring a claim under section 315.006, the Commission intervened in the suit seeking damages. Although TCI asserts a question exists regarding whether the City properly designated the MKT Freight Station a historical structure or property, it specifically presents its argument to this Court as the "effect of the relief that THC is seeking" under the statute and not "the validity of THC's claim under the applicability of Section 315.006 under these circumstances. . . ." Thus, for purposes of the takings analysis, we need not determine whether the building was properly designated under the statute.

We conclude TCI has failed to establish that the Commission committed a regulatory taking under section 315.006. TCI has not pleaded any facts sufficient to show the Commission's lawsuit to enforce its rights under section 315.006 caused TCI to suffer a physical invasion of its property or destroyed all economically viable use of the property. *See Sheffield Dev. Co.,* 140 S.W.3d at 671. Although it argues the Commission's request of a constructive trust constitutes a taking, the trial court has not ordered a constructive trust and under these facts, we are not in a position to review or rule on such hypothetical relief. Thus, the possibility of the trial court creating a constructive trust some time in the future does not destroy all economical viable use of the property nor does it unreasonably interfere with TCI's use and enjoyment of the property.

The Commission merely intervened in the lawsuit to assert damages for destruction of an alleged historic building, which it has the right to pursue under section 315.006. Under these facts, we refuse to conclude that the filing of a lawsuit constitutes a taking. *See City of Dallas v. Blanton,* 200 S.W.3d 266, 271 (Tex.App.-Dallas 2006, no pet.) (noting a takings claim must assert an intentional government act resulting in property being taken, damaged, or destroyed for public use). The filing of a lawsuit, which although could be construed as an intentional governmental act, does not in and of itself result in property being taken, damaged, or destroyed for public use. *Id.* As such, a lawsuit cannot be the basis for a takings claim.

Furthermore, the only regulations TCI complains about, specifically those regulations regarding revocation of its demolition permit, are imposed by the City and not the Commission. Section 315.006 provides the Commission a financial remedy against those who damage or destroy historic buildings in violation of local ordinances. TEX. LOC. GOV'T CODE ANN. 315.006(j)-(k). It in no way provides the Commission with an avenue to regulate any use of TCI's property. Accordingly, TCI failed to assert a valid regulatory takings claim because neither section 315.006 nor the Commission's enforcement claim actually regulate the property.

Because TCI failed to plead sufficient facts to establish a regulatory takings claim under section 315.006 by the Commission, we conclude TCI failed to affirmatively demonstrate the trial court's jurisdiction by alleging a valid waiver of immunity under article I, section 17 of the Texas Constitution. Thus, the trial court properly granted the Commission's first amended plea to the jurisdiction on TCI's inverse condemnation counterclaim. We overrule TCI's first issue as to the Commission.

## City's Plea to the Jurisdiction

The trial court signed an order dismissing TCI's inverse condemnation claim "as not being ripe for adjudication," and granted the City's first amended plea to the jurisdiction as to TCI's Texas Private Real Property Rights Preservation Act claim and conspiracy to take claim. We note TCI has not appealed the Texas Private Real Property Rights Preservation Act ruling; therefore, it is affirmed. *See, e.g., Freeman v. Stephens Prod. Co.,* 171 S.W.3d 651, 657 (Tex.App.-Corpus Christi 2005, pet. denied) (affirming ruling in judgment not challenged on appeal).

In its first issue against the City, TCI argues the trial court has jurisdiction over its claim because it pleaded an inverse condemnation cause of action, which waived the City's sovereign immunity. It further contends in its second issue the inverse condemnation claim is ripe for adjudication despite the City's claim it failed to exhaust its administrative remedies. Because the ripeness issue is dispositive, we begin with that claim.

Ripeness is an element of subject matter jurisdiction. *Mayhew,* 964 S.W.2d at 928. As such, it is a legal question subject to de novo review. *Id.* The ripeness requirement emanates, in part, from the separation of powers provision set out in article II, section 1 of the Texas Constitution. Under the separation of powers doctrine, courts are without jurisdiction to issue advisory opinions because such is the function of the executive department, not the judiciary. *Id.; Pub. Util. Comm'n v. Houston Lighting & Power Co.,* 748 S.W.2d 439 (Tex.1987) ("A court has no jurisdiction to render an advisory opinion on a controversy that is not yet ripe."). The ripeness doctrine conserves judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes. *Mayhew,* 964 S.W.2d at 928. In land use situations, courts have concluded in order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue. *Id.* at 929.

Here, TCI recognizes that in order for its regulatory taking claim to be ripe, there must be a final decision regarding the application of the regulations of the property at issue. However, it disagrees with the City that its claims are not ripe because TCI failed to obtain a final decision from the City regarding either the revocation of the demolition permit or ob-

taining approval to demolish the building. TCI asserts its takings claims have already occurred because it has lost total productive use of the area where the building once stood, and it suffered a diminution in value when it was forced to sell an option at half the alleged market value. Thus, any action it now takes would be futile.

The City responds this Court should not overlook the reason for the litigation in the first place, which is TCI's misconduct by violating a historical district ordinance and lacking a demolition permit. If TCI had obtained approval from either the Landmark Commission or Dallas City Council to demolish the building or properly appealed the revocation of the building permit, there would be no violations of ordinances or codes for the City to enforce through a lawsuit. It further asserts that without knowing the outcome of an administrative appeal from the revocation of the demolition permit, any takings claim is not ripe and an opinion by this Court would be an improper advisory opinion. We agree with the City.

 TCI alleges "the City has taken, at least temporarily, its property when it prevented TCI from removing the remnants and debris from the demolished building, made the claims that it has in the underlying lawsuit and filed multiple notices of lis pendens." It further asserts the City has taken its property by claiming a constructive trust.[2] As explained above, we refuse to conclude that the filing of a lawsuit constitutes a taking. *See City of Dallas,* 200 S.W.3d at 271 (Tex.App.-Dallas 2006, no pet.) (noting a takings claim must assert an intentional government act resulting in property being taken, damaged,

or destroyed for public use). The filing of a lawsuit and lis pendens, which although could be construed as an intentional governmental act, does not in and of itself result in property being taken, damaged, or destroyed for public use. *Id.* Likewise, although TCI argues the request for a constructive trust constitutes a taking, the trial court has not ordered a constructive trust and under the current facts, we are not in a position to review or rule on such hypothetical relief. Thus, the possibility of the trial court creating a constructive trust some time in the future does not equate to a taking by the City. Having resolved these arguments, we are now left with determining whether TCI's claim that the City took its property when it prevented TCI from removing the remnants and debris from the demolished building is ripe for adjudication.

According to pleadings, on or about March 6, 2006 an application was filed stating a five hundred square foot building needed to be demolished because it was a "safety hazard." In the remarks area for office use only, a staff member wrote "demo parking lot building only." The same day, the City issued permit no. 0603061085 and authorized the applicant to "demolish structure and clear lot." The permit also stated it was subject to the provisions of all governing ordinances and subject to cancellation upon notice. On April 20, 2006, the City revoked the demolition permit. Despite the revocation, the building was demolished on April 29, 2006.

Chapter 52, section 301 of the Dallas City Code provides certain procedures for a party to challenge the revocation of a demolition permit. Section 301.1.1 first states a person, firm, or corporation shall not, without first obtaining a permit from

---

**2.** Although the City discusses at length the reasons why TCI's claims are not ripe because it failed to obtain a final decision regarding demolition under ordinance 22158 by proper-

ly applying for a demolition permit, we will only address those claims TCI asserts in its pleadings for its alleged takings claim.

the building official, demolish a structure. DALLAS, TEX., CODE ch. 52, § 301.1.1 (2008). Should the building official revoke the permit because the permit was issued in error, the determination "shall be final unless appealed to the building inspection advisory, examining, and appeals board in accordance with 208 not later than the 10th day after the date on which written notice of the action or determination is mailed . . . ." *Id.* § 302.7. Section 208.3 then allows any person aggrieved by a decision or ruling by the board to appeal again to the district court of Dallas County within thirty days after receiving notice of the board's decision. *Id.* § 208.3.

Nothing in the record establishes that TCI attempted to appeal the revocation of its permit; therefore, it failed to take advantage of any of the administrative procedures for reviewing the revocation. Thus, the City was not given the opportunity to exercise its full discretion in considering plans for the building before TCI demolished it. *See Mayhew*, 964 S.W.2d at 929 (holding in land use situations, courts have concluded in order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue). Because there was no final decision regarding the revocation, TCI's inverse condemnation claim is not ripe for adjudication, and the trial court properly granted the City's amended plea to the jurisdiction. TCI's second issue is overruled.

Having determined the inverse condemnation claim is not ripe for adjudication, we likewise conclude the trial court properly dismissed TCI's inverse condemnation claim for lack of jurisdiction. TCI's first issue is overruled.

## Conspiracy to Take Claims Against City and Commission

We now consider whether the trial court properly granted the Commission's and the City's first amended pleas to the jurisdiction on TCI's conspiracy to take claim. TCI alleged in its pleadings that "the THC and the City of Dallas engaged in a conspiracy the object of which was to accomplish either an unlawful purpose unauthorized by law or a lawful purpose by an unlawful means; that is, a taking of TCI's property without just compensation."

Assuming without deciding that a cause of action exists for a conspiracy to take claim, the Texas Tort Claims Act provides that sovereign immunity exists for intentional torts, such as conspiracy. TEX. CIV. PRAC. & REM.CODE ANN. § 101.057 (Vernon 2005); *Univ. of Tex. Med. Branch of Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.). Therefore, the Commission and the City, as governmental units, cannot be held liable for the intentional tort of conspiracy. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(A)-(B) (Vernon 2005); *see id.* § 101.057.

We recognize the underlying issue in the conspiracy claim is based on a taking, which is governed by the Texas Constitution and may provide a waiver of immunity; however, pleading a civil conspiracy is a separate cause of action, which is governed by the Texas Torts Claims Act. We acknowledge the paradox that immunity is waived for a takings claim and not a civil conspiracy based on a taking; however, until the legislature states otherwise, we are bound by its decision to waive immunity for only a takings claim. Thus, TCI's conspiracy to take claim must necessarily fail, and the trial court properly granted the Commission's and the City's first amended pleas to the jurisdiction as to TCI's conspiracy counterclaim. *See, e.g., Tex. Bay Cherry Hill, L.P. v. City of Fort*

*Worth,* 257 S.W.3d 379, 393 (Tex.App.-Fort Worth 2008, no pet.) (concluding municipality was immune from civil conspiracy claim). We overrule TCI's third issue.

## Conclusion

Having considered the arguments, we affirm the trial court's order granting both the Commission's and the City's first amended pleas to the jurisdiction.